ILYA NOVOFASTOVSKY, ESQ.
ELLIE A. SILVERMAN, ESQ. *
JENNIFER S. HEITMAN, ESQ. ·
GENE R. BERARDELLI, ESQ.
MICHAEL S. GREENFIELD, ESQ.
CRAIG PHEMISTER, ESQ.
MATTHEW B. SEGAL, ESQ. *
SCOTT BRETTSCHNEIDER, ESQ., of counsel



ATTORNEYS AND COUNSELORS AT LAW
299 BROADWAY, 17TH FLOOR
NEW YORK, NEW YORK 10007
----
TELEPHONE: (212) 233-6686
FACSIMILE: (212) 233-6687

STATES OF ADMISSION:
NEW YORK
* NEW JERSEY
· CONNECTICUT

Writer's Direct Email
ellies@novolawfirm.com

October 12, 2015

**VIA ECF**
Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re: Jarrett Frost v. City of New York, et al.
        15 Civ. 4843 (NRB)

Your Honor:

    I am a Senior Associate at Novo Law Firm, PC and am the attorney assigned to represent Plaintiff JARRETT FROST in the above-referenced matter. I submit this letter in opposition to Defendants' Pre-Motion Conference request to discuss its anticipated motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    By way of background, this action stems from the false arrest and subsequent civil violations that Plaintiff Jarrett Frost experienced at the hands of the defendants. After a homicide occurred on July 6, 2010, Mr. Frost became a "person of interest" during the investigation. For approximately six (6) months, Plaintiff was intermittently brought to the 40th precinct, against his will, without freedom to leave and with all requests to have an attorney present denied. On or about January 13, 2011, Mr. Frost was arrested and brought to the 40th precinct. Without the right to have an attorney present, he was placed in a faulty line-up, and photo array. After a combined twenty-six (26) hours at the precinct and Central Bookings, he was taken to Rikers and put in solitary confinement while awaiting the Grand Jury. The Grand Jury was not convened until March 1, 2011.

    Mr. Frost was acquitted on June 24, 2014 and released on or about June 27, 2014. He was incarcerated for over three and one-half (3 ½ years). Upon information and belief, at the trial, the "star" witness for the District Attorney fully recanted his testimony.

    While Mr. Frost was awaiting trial at Rikers, he was subjected to continuous multiple acts of violence at the hands of both the inmates and the correction officers. Additionally, he was subjected to continuous acts of retaliation by correction officers in the form of exaggerated, fabricated and deceptive infractions. He was abused, assaulted and punished. He was subjected to retaliation in the form of "looking the other way" and multiple instances of failing to intervene. As a result of many beatings by the correction officers and inmates, he sought medical treatment. He was strip searched. He sustained permanent injuries including but not

1

limited to forearm scars, bruised eyes leading to vision problems, wrist injuries, forehead scars, scars on his lips and back injuries. He was illegally confined to solitary confinement (in addition to the 120 days while awaiting the grand jury) more than twenty (20) times. During those approximate *one-thousand, two-hundred and fifty-nine (1,259) days incarcerated*, Mr. Frost was assaulted, battered, intimidated and in fear for his life and well-being. These fears continued subsequent to his acquittal because even after his release, he was mandated to attend court appearances with regards to the additional unfounded charges he received while in prison. In addition to his permanent physical injuries, he suffers from severe post-traumatic stress and other emotional damages.

On or about June 22, 2015, Plaintiff commenced the instant action by filing a complaint in this Court. This Complaint was brought less than one (<1) year after his release and while some of his prison charges were still pending.

The Complaint asserts twenty (20) causes of action. The City now writes to request a pre-motion conference to discuss their anticipated partial motion to dismiss the complaint. In the letter, Defendants name nineteen (19) out of Plaintiff's twenty (20) causes of action that they anticipate will be the basis for the partial motion to dismiss. Notably, the City *does not* seek dismissal of Plaintiff's Eleventh (11th) Cause of Action for Excessive Force.[1]

The plaintiff agrees that the following claims should be dismissed: (2) § 1983 liability against New York City Police Department; (3) § 1983 liability against Bronx County District Attorney; (4) § 1983 liability against ADA Robert Hertz; (7) § 1983 liability against the New York City Department of Correction; and (13) False Arrest/False Imprisonment under New York State liability. For the reasons set forth (briefly) below, however, the City's anticipated motion to dismiss should otherwise be denied.

**Material factual disputes preclude the defense of barring the personally named defendant Sgt. Lopuzzo:**

The City makes a blanket argument that Plaintiff must make specific allegations as to the personally named defendants, specifically Sgt. Lopuzzo. The City claims that Sgt. Lopuzzo was the supervisor of the 40th Detective Squad, however, that statement does not circumvent that upon information and belief, he was in fact personally involved and/or an active participant in the arrest/prosecution of Mr. Frost.

Under the law of this Circuit, one may be considered "personally involved" for purposes of liability under § 1983 where they set the wheels of the constitutional depravation in motion, regardless of whether they are "directly" involved. *See, Celestin v. City of New York,* 581 F.Supp.2d 420, 429 (E.D.N.Y. 2008)("Personal involvement may be established by a showing of direct participation, meaning 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or *indirect participation*' such as <u>ordering</u> or <u>helping others</u> to do the unlawful acts." )(emphasis added).

**The "John Doe" named defendants should not be dismissed because there is ample time to substitute named defendants and even if SOL has passed, principles of the relation back doctrine apply in this instance:**

The City argues that Plaintiff should have identified and served named defendants and that Plaintiff cannot circumvent the SOL by replacing John Doe with a named party. Plaintiff

---

[1] Defendant does limit this Cause of Action to Excessive Force on July 16, 2013, however Plaintiff would argue that the Cause of Action should not be so limited.

argues that the statute of limitations has not expired.  Plaintiff was acquitted on June 24, 2014 and released on or about June 27, 2014 and the three-year statute of limitations for malicious prosecution does not terminate until on or about June 24, 2017.  *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995); *see also*, *Harmon v. New York County District Attorney's Office*, 2014 WL 1044310, *5 n.3 (S.D.N.Y. 2014).  To be sure, the Second Circuit has held that ignorance of a party's true name does not constitute a "mistake of identity" that can give rise to relation back under Fed. R. Civ. Pro. 15(c). *See*, *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995).  However, because the § 1983 statute of limitations is borrowed from state law, a separate branch of Rule 15 – namely, Rule 15(a) – permits relation back in the specific context of Section 1983 actions "if New York state law provides a more forgiving principle." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). The court found that New York law, namely CPLR § 1024, did provide a more forgiving principle, because it permits parties who are "ignorant, in whole or in part, of the name or identity of a person who may properly be made a party" may proceed against him as an unknown party and later make "John Doe substitutions nunc pro tunc." Id. at 518-19.

       Thus, since the plaintiff's claim for excessive force and unconstitutional conditions of confinement relates to the entire period in which he was incarcerated, this claim too can potentially be asserted against individual defendants up to and including June 27, 2014.  It should be noted that the John Doe defendants are identified as "Correction Officers".  Such identification has been held to fairly apprise corrections officers that he/they were the intended defendants.

       Likewise, it is possible that once the names of the individual defendants are discovered and they are substituted for the John Does, their claims might relate back to the original filing of the complaint in June, 2015.  *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Cotto v. Pabon*, 2008 WL 4962986, *13 (S.D.N.Y. 2008).

       Notably, on September 17, 2014, Plaintiff filed a Notice of Claim against New York City. On or about February 6, 2015, a 50-H Hearing was held.  In that hearing, Plaintiff listed many details and facts, which became a part of the Complaint.  Moreover, at the conclusion of that hearing, Mr. Frost executed and provided authorizations for his sealed records to the City of New York.

       Thus, not only is it clear that Plaintiff executed that access to sealed records document; it was done as a prerequisite to bringing suit.  As such, Mr. Frost was aware of it and of necessity relied on it in his complaint.   Therefore, the Court may consider documents "integral" to this Complaint even if they are not referenced in or attached to the pleadings.  In other words, this Court may consider "documents that the plaintiff either possessed or knew about and upon which [he] relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000).

       At the very least, further discovery is necessary to determine whether the plaintiff exercised sufficient diligence in attempting to learn the John Does' true names and/or whether they were aware of the pendency of this action.

**<u>Causes of action for emotional distress do not accrue until case is dismissed on June 27, 2014</u>**

       The Courts in this Circuit and State have held that in certain scenarios the cause of action for IIED constitutes a tort that is continuing in nature and only accrues after the completion of the last act. *See, Colliton v. Cravath, Swaine & Moore,* 2008 WL 4386764 (S.D.N.Y. 2008)("[If] plaintiff is subject to a sustained pattern of abuse, the continuing tort doctrine applies, and

3

the statute of limitations begins to run *after the last actionable abuse has occurred.*")(emphasis added). In fact, where it is alleged that the course of actionable conduct which gives rise to the IIED claim continues over a period of time, it is the *end* date of that pattern of behavior that is relevant for statute of limitations purposes. *See, Neufeld v. Neufeld,* 910 F.Supp. 977, 982-83 (S.D.N.Y. 1996)("[C]laims for IIED that allege a continuing pattern and practice of actionable behavior may invoke the continuing tort doctrine to provide an exemption from the statute of limitations where the 'last actionable act' of the alleged course of conduct falls within thestatute of limitations."). Therefore, Plaintiff would argue that the Continuing Tort Doctrine applies here for statute of limitation purposes.

**The *MONELL* claims are sufficiently plead or alternatively, Plaintiff should be given leave to replead:**

The City contends that Plaintiff's municipal liability claims are inadequately plead. This contention is wrong. The Complaint specifically alleges that the City failed to train and/or supervise its employees to respect the constitutional rights of citizens such as Mr. Selvon, and it alleges numerous facts – comprising a course of conduct that involved many law enforcement officers and occurred over an extensive period of time – from which it may be plausibly inferred that such failure to train and/or supervise took place.

The City correctly states that municipal liability under Section 1983 is contingent upon the municipality itself being at fault, through a policy, practice and/or custom by which the plaintiff suffered constitutional injury. *See, Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). A claim for municipal liability may be predicated upon failure to train and/or supervise municipal employees, and such a claim has three elements: (1) "that the policy-maker knows to a moral certainty that his employees will confront a given situation;" (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), that Court reversed a Fifth Circuit decision on the ground that application of a "heightened pleading standard to [Section] 1983 actions alleging municipal liability" was in error. See id. at 165, 168. In doing so, the *Leatherman* Court specifically rejected the municipal defendant's argument that "a plaintiff must do more than plead a single instance of misconduct." Id. at 167. Moreover, Courts have quoted with approval the Ninth Circuit decision of *Karim-Panahi* v. Los Angeles Police Department, 839 F.2d 621 (9th Cir. 1988), which stated unequivocally that "[a] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss *even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice.*" *Leatherman*, 507 U.S. at 165, quoting *Karim-Panah*i, 839 F.2d at 624 (emphasis added).

Plaintiff also relies on *Amnesty America*, in which the Second Circuit noted that a plaintiff "need only plead that the city's failure to train caused the constitutional violation" because"[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." 361 F.3d at 130 n.10 (citing *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992)). The Plaintiff need not at this stage, allege all elements of a prima facie case of municipal liability, instead he must allege facts to

allow the Court to draw an inference that the constitutional violations were a result of a municipal policy or inaction. *Amnesty Am.*, 361 F.3d at 130.

Plaintiff acknowledges that eventually, he will have to prove the allegations of continuous and multiple acts of violence, punishment, harassment and fabricated infractions with greater specificity but argues that at this point, they are sufficient, taken as true, for the Court to infer that his treatment during confinement was the result of something more than a single officer's misconduct – and, that it is at least plausible that the "something more" was a custom or policy of encouraging, condoning or turning a blind eye to the types of misconduct about which Mr. Frost complains.

**The post arraignment deprivation of liberty for over one thousand, twelve hundred and fifty-nine days implicates malicious prosecution.**

The City of New York through its police officers and detectives were active participants for the Grand Jury and prosecution of Mr. Frost's case. The investigation was palpably improper. Specifically, but not limited to this, the witness that the City of New York that was alleged by Police to have provided Mr. Frost's name denied <u>all</u> allegations at trial. Upon information and belief, there was more than one witness that recanted and or denied picking Mr. Frost as the person who committed the homicide.

The City claims that due to the indictment, plaintiff's arrest was supported by probable cause. However, Mr. Frost does not have a full and fair opportunity at the time of the Grand Jury to litigate the issue at bar. Under New York law, the doctrine of collateral estoppel cannot be applied without first considering the availability of appellate review. These safeguards are not in place for correcting pre-trial hearing determinations nor grand jury indictments. In *Johnson v. Watkins,* 101 F3d 792 (1996)*,* the Court reasoned that probable cause in pre-trial hearings cannot be given issue preclusive effect against a defendant subsequently acquitted of all charges. This is predicated on the fact that defendant has no opportunity to obtain review of those issues decided against him until a jury verdict is entered. The same reasoning should be applied here. Mr. Frost was not able to fully and fairly litigate those findings until the jury verdict. Thus, his one and only opportunity to do so is now. He would suffer great prejudice if prevented from doing so as this is his sole opportunity.

Here, this Court is presented with more than just the plaintiff's version of events because the witness later recants at trial. Thus, a question of fact may exist as to the propriety of the grand jury indictment. At the very least, more discovery is warranted to determine whether in fact this indictment was procured by fraud perjury or bad faith. i.e. being able to look to the police officers' memo books or other investigative documents, which could corroborate Plaintiff's version of events.

Therefore, Plaintiff submits that by agreeing to withdraw certain causes of action listed above, a pre-motion conference is not appropriate as there are questions of fact with regards to the remaining causes of action.[2]

Thank you for your consideration herein.

Respectfully submitted,<br>
/s/<br>
Ellie Silverman

cc: VIA ECF- Erica Haber, Esq. *Attorney for Defendants*

---

[2] Due to space limitations, Plaintiff reserves his right to fully address and argue all of Defendants' contentions.